Filed 10/13/23  P. v. Pahva CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C096928 |
| Plaintiff and Respondent, | (Super. Ct. No. CR-2000-7133) |
| v. | |
| GERARDO PAHVA, | |
| Defendant and Appellant. | |

Defendant Gerardo Pahva appeals the denial of his Penal Code section 1473.7 (statutory section citations that follow are found in the Penal Code unless otherwise stated) motion to vacate his 2000 conviction for transporting a controlled substance. Defendant contends:  1) trial counsel did not advise him he would be deported as a result of his plea and he did not meaningfully understand the immigration consequences of his plea; and 2) he would not have entered the plea if he had known he would be deported. We affirm the order.

1

FACTS AND HISTORY OF THE PROCEEDINGS

In January 2000, when he was 23 years old, defendant and a friend were stopped for speeding while driving from Carson City, Nevada to Corning, California. During a search of the car, officers found a bag containing over 6,500 grams of methamphetamine. The friend told officers he and defendant had gone to Los Angeles to buy watches and stayed overnight at a motel. At the motel, they received a phone call from an unidentified man who asked them to take a bag "up north" and put it in a garbage can there. In exchange, they would receive $1,000, which would be in the garbage can upon their arrival. After they agreed, the unidentified man put the bag in the trunk of their car.

Defendant was charged with transporting methamphetamine from one county to a noncontiguous county (Health & Saf. Code, § 11379, subd. (b)), and possession of methamphetamine for sale (Health & Saf. Code, § 11378), each with further drug quantity enhancement allegations (Health & Saf. Code, § 11370.4(b)(2)). On March 1, 2000, an additional charge was added, charging defendant with transporting methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) That same day, defendant pleaded no contest to transporting a controlled substance (Health & Saf. Code, § 11379, subd. (a)) in exchange for a stipulated midterm sentence of three years in state prison and dismissal of the two remaining counts. In the plea form, defendant acknowledged, "I understand that if I am not a citizen, a plea of GUILTY or Nolo Contendere to an offense for which I have been charged may result in my deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States." Trial counsel's attached declaration also stated he explained the plea form to defendant and to the best of his knowledge and belief, defendant understood the advisements in the plea form. The trial court sentenced defendant to three years, in accordance with the plea agreement.

In March 2022, defendant filed a motion under section 1016.5, claiming the trial court failed to advise him of the immigration consequences of his plea; and under section 1473.7, claiming prejudicial error damaged his ability to meaningfully understand, or knowingly accept the immigration consequences of his conviction. At a hearing on the motions, the court and parties indicated based on the age of the case, neither the court nor the parties had a transcript or prior court records of the underlying proceedings other than the original plea form. Based on the plea form and attorney declaration, the trial court denied the section 1016.5 motion. Defendant does not appeal that denial.

As to the section 1473.7 motion, defendant's petition stated he came to the United States at 20 years old to escape "the hardship and economy in Mexico that my parents faced"; he had family in the United States; his attorney did not inform him that pleading guilty would result in him being deported; if he had known he would be deported, he would have gone to trial, because he and some of his family lived in California.

The parties filed briefing on the section 1473.7 motion. The People argued defendant had not established counsel was ineffective and defendant had not shown a prejudice. The People also included a declaration from trial counsel which stated: 1) he did not recall defendant's case and he no longer had any case files from his representation of defendant; 2) his standard practice is to always advise clients of immigration consequences in discussing a plea; 3) when the client informs him they are a United States citizen he crosses out the plea form immigration advisement, otherwise he leaves it and advises them; 4) the fact that he did not cross it out means he would have advised defendant of the immigration consequences; and 5) he would not have signed the declaration if he did not believe defendant understood the details and consequences of his plea. The trial court denied the motion, "for the reasons . . . set forth" by the prosecutor.

3

Defendant contends the trial court erred in denying his section 1473.7 motion as he was not advised by counsel of the immigration consequences of his plea and was prejudiced by his failure to meaningfully understand those consequences. Specifically he claims neither the trial court's nor counsel's generic advisements indicated he was advised he *would* be deported as a result of the plea, only that his conviction "may" result in deportation; and that his declaration establishes he would not have pleaded guilty if he had known he would be deported. The People agree the plea form alone does not establish defendant understood the immigration consequences of his plea but claim defense counsel's declaration does. The People also argue defendant failed to establish he would have rejected the plea if he had understood the immigration consequences.

To prevail under section 1473.7, a defendant must demonstrate both that they did not meaningfully understand the immigration consequences of their plea and that this misunderstanding constituted prejudicial error. " '[P]rejudical error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.' " (*People v. Espinoza* (2023) 14 Cal.5th 311, 319.) A defendant is not required to prove a claim of ineffective assistance of counsel to be entitled to relief under section 1473.7. (§ 1473.7, subd. (a)(1).)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences." (*Espinoza, supra,* 14 Cal.5th at p. 319.) Where, as here, "the facts derive entirely from written declarations and other documents, . . . '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.]" (*People v. Vivar* (2021) 11 Cal.5th 510, 528, fn. omitted.) In such cases, "it is for the appellate court to

4

decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid.*) On independent review, we conclude defendant's claim fails for failure to show prejudice. (*People v. Bravo* (2021) 69 Cal.App.5th 1063, 1073, review granted Dec. 15, 2021, S271782.)

The parties agree a conviction under former Health and Safety Code section 11379, subdivision (a) subjected defendant to mandatory deportation. Defendant declared he was not informed his plea "would lead to [him] be[ing] deported/removed." The plea form and trial counsel's declaration do not contradict defendant's statement. Rather, the record reflects defendant was advised his plea *may* have immigration consequences, not that it *would* have mandatory consequences. Trial counsel had no records or independent recollection of this specific case that suggested his advisement went beyond what was set forth in the plea form. While this advisement was adequate under section 1016.5, it "was inadequate to advise [defendant] of the mandatory immigration consequences of his plea." (*Bravo, supra,* 69 Cal.App.5th at p. 1073, review granted.) " '[T]he words "may have" in a[n] . . . immigration advisement are not an adequate immigration advisement for defendants charged with serious controlled substance offenses.' [Citation.] In such cases, '[d]efendants must be advised that they will be deported, excluded, and denied naturalization as a mandatory consequence of the conviction.' [Citations.]" (*People v. Soto* (2022) 79 Cal.App.5th 602, 609.)

"To determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances.' " (*Espinoza, supra,* 14 Cal.5th at p. 320.) The relevant factors include: "the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible. [Citations.] Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as

5

the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.]" (*Ibid.*) Moreover, a defendant must corroborate their factual assertions with objective evidence such as: "declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Id.* at p. 321.) Defendant does not meet this burden.

As to his section 1473.7 petition, defendant stated he had told his attorney he had come to the United States to escape the hardship and economy in Mexico; had been here since he was 20 years old; and he and part of his family lived in California. He also stated if he had been advised he would be deported as result of this conviction, he would have gone to trial. At the time of his conviction, defendant had sustained one prior conviction in 1998 for illegal entry into the United States and he voluntarily returned to Mexico.

At the time of his plea, defendant had been in the United States for approximately three years and had some unidentified family members living here, as well. Defendant's declaration does not set forth any additional discussion with counsel suggesting that immigration consequences were paramount in his mind when accepting the plea. Nor does defendant identify any additional community ties or relationships beyond the unidentified family members who were living in California. Defendant has not suggested any possible defenses he might have asserted at trial. Defendant has not offered an immigration neutral disposition that would have been acceptable to the prosecutor. In addition, defendant was facing charges and enhancements which subjected him to a substantially longer sentence. Specifically, in 2000, the sentencing triad for a Health & Safety Code, section 11379, subdivision (b) conviction was three, six, and nine years, and the drug quantity enhancement an additional five years. Thus, defendant was facing a potential sentence of eight to 14 years. Instead, as a result of the plea, he received a three-year term.

6

We also note that apparently the reason defendant was offered a three-year maximum sentence was that, according to the District Attorney's statement on the plea form, the District Attorney was willing to agree to a three-year sentence "based on officer's continued unavailability" and the District Attorney's "desire not to dismiss and refile." It is reasonable to assume that defendant wanted to accept the three-year offer to avoid having the officer become available to testify at trial at which time he would have been facing a much longer term.

On this record, defendant does not meet his burden to establish prejudice. (*Bravo, supra,* 69 Cal.Ap.5th at pp. 1076-1077, review granted.)

DISPOSITION

We affirm the order denying defendant's section 1473.7 motion.

_____
HULL, Acting P. J.

We concur:

_____
MAURO, J.

_____
KEITHLEY, J.*

_____

* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution